**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2026 APR 13 A II: 09

**Ellen Plotkin,** *Pro se*
**Alexander Plotkin,** *Pro se*
Plaintiffs,

v.

**NATIONAL CREDIT UNION ADMINISTRATION (NCUA),**
**Kyle S. Hauptman, in his official capacity as Chairman of NCUA Board**
Defendants.

## <u>COMPLAINT</u>

**I. PARTIES:**

A. Plaintiffs

| | | |
|---|---|---|
| Plaintiff No. 1 | Ellen Plotkin | |
| | 43 Saxonia Avenue | |
| | Wyckoff NJ 07481 | |
| | 551-298-2483 | |
| Plaintiff No. 2 | Alexander Plotkin | |
| | 43 Saxonia Avenue | |
| | Wyckoff NJ 07481 | |
| | 551-298-2483 | |

B. Defendants

Defendant No. 1    NATIONAL CREDIT UNION ADMINISTRATION
("NCUA")
1775 Duke Street
Alexandria, Virginia 22314

Defendant No. 2    Kyle S. Hauptman, in his official capacity as Chairman
and sole member of the NCUA Board, issuing final
agency determinations of the amount of share insurance
payable to member-owners of a liquidated credit union
NATIONAL CREDIT UNION ADMINISTRATION
1775 Duke Street
Alexandria, Virginia 22314

1

## II. PRELIMINARY STATEMENT

1. Plaintiffs' claim arises from Defendants' April 30, 2025 involuntary liquidation of Unilever Federal Credit Union ("UFCU"). Plaintiffs seek judicial review under the Administrative Procedure Act of Defendants' Final Agency Action which "administratively denied" Plaintiffs' appeal to NCUA Board. Defendants issued this Final Action on February 13, 2026—93 days after Plaintiffs filed an appeal to the NCUA Board.

2. Plaintiffs sought clarification from Defendants of this final agency action. In response, Defendants stated that:

"failure by the Board to issue a decision on an appeal within 90 days shall be deemed to be a denial of the appeal. 12 C.F.R. § 746.206(b)."

Defendants thereby confirmed that they relied on "deemed denial"—the fallback provision in the final sentence of § 746.206(b)—to dispose of Plaintiffs' Appeal on insurance claim.  Defendants chose to not issue a decision on the merits, which also relieved Defendants of the § 746.206(b)'s requirement that a decision "must state the reasons" for the decision.

3. Independently of § 746.206(b), subsection (a) provides:

> De novo review by Special Counsel. After receipt of a timely appeal, the
> Special Counsel shall contact the relevant NCUA program office and
> request a complete set of all pertinent materials, including internal
> memoranda, correspondence, and records having a bearing on the initial
> agency determination being appealed. The Special Counsel will conduct
> an independent review of these materials, along with all materials
> submitted by the petitioner in support of the appeal. The Special Counsel
> will make a recommendation to the Board as to the appropriate disposition

2

of the appeal after having evaluated the applicable legal arguments and considered the facts and circumstances that pertain to the appeal."

This provision imposes an affirmative obligation of **de novo review by Special Counsel**, requiring review of the complete administrative record and a reasoned recommendation to the Board based on law and fact.

Plaintiffs received no decision, no findings, no reasoning, and no indication that any such review occurred. **This is not an adverse decision—it is the absence of a decision.** As confirmed by Defendants' own clarification, the agency relied exclusively on the lapse-of-time provision—i.e., a "deemed denial"—to dispose of the appeal.

4. Based on paragraphs 1- 3 above, Plaintiffs allege that:

The agency's reliance on a deemed denial operated to extinguish (i) the obligation to issue a written decision, (ii) the obligation to provide reasons, and (iii) the obligation to conduct de novo review—thereby resulting in a final agency action that appears to reflect the complete absence of Board review.

The entirety of reasoning that NCUA provided on this claim was the September 19, 2025 response to Plaintiffs request for reconsideration. Assuming, arguendo, that NCUA Board adopted that response, Plaintiffs allege that even for that decision the NCUA Board's scope of review would have to include all the requirements and materials of de novo review of 746.206(a) at the time of Board's review (November 2025 – February 2026).

3

5. Assuming, *arguendo*, that Defendant NCUA Board conducted such *de novo* review and still used the same response, then Plaintiffs allege that Defendants treated defective, internally inconsistent, and fraud-compromised UFCU account records as "conclusive" while refusing to resolve contradictions within those same records, including contradictions reflected across account-opening documents, periodic statements, internal system fields, and contemporaneous member communications.

6. Plaintiffs maintained multiple share certificates representing their lifetime savings and structured those accounts with the goal of maintaining full federal insurance coverage, relying on an advisory relationship with two of the five UFCU staff (including UFCU CEO and Board Treasurer Jim Kopfensteiner).

7. Plaintiffs reviewed December 2024 quarterly statements and became concerned that their portfolio might not be fully insured, as those statements and related account records contained missing or incorrect ownership classifications.

8. In January 2025—approximately 90 days before liquidation—Plaintiffs provided written instructions to rebalance funds among certificates to preserve full coverage.

9. UFCU advised that its core processing system had recently changed, that statements would be unavailable, and that Plaintiffs should rely on emailed screenshots to complete transfers; those screenshots contained multiple errors.

10. After liquidation, the liquidating agent determined on July 24, 2025 that $259,625 of Plaintiffs' savings was uninsured based on UFCU's account records and the agency's insurance rules.

4

11. Plaintiffs timely sought reconsideration and submitted contemporaneous documentation showing conflicting ownership classifications (including "single" versus payable-on-death designations), missing or erroneous system fields and statements, incomplete or misleading member communications, and transaction history indicating that key transfers (including those involving CD20 and CD22) were prompted by the same record defects later used to deny coverage. Plaintiffs also identified separate inconsistencies affecting CD37.

12. At all relevant times, the NCUA Board consisted of a single member, Chairman Kyle S. Hauptman, who as Chairman of the National Credit Union Administration and sole Board member bore responsibility for issuing a Board decision.

13. On October 22, 2025, the NCUA Office of Inspector General issued its semi-annual report (signed by the Acting Inspector General) identifying fraud and concealment of liquidity conditions at UFCU, and on November 21, 2025, the report was publicly released (EXHIBIT G). In the table entry for Unilever FCU, on page 13, the report states:

> *Unilever was involuntarily liquidated due to fraud. Two credit union employees hid borrowings and used them to conceal their fraudulent activity and mask the credit union's true liquidity position.* (EXHIBIT G).

14. By November 12, 2025 when Plaintiffs filed their appeal to the NCUA Board, Defendants—including the sole Board decisionmaker—had actual knowledge that UFCU account records were unreliable and internally inconsistent, reflecting systemic data and classification defects.

15. On February 13, 2026, Defendants issued a one-sentence administrative denial stating: *"we are administratively denying your appeal."* (EXHIBIT A).

16. On March 3, 2026, Defendants confirmed that no Board decision had been issued and that the failure to act was: *"deemed to be a denial of the appeal."* (EXHIBIT B).

17. Defendants provided no findings, no reasoning, and no legal analysis, and instead issued an administrative *"deemed to be a denial"* due to lapse of time. (EXHIBITS A, B). In a single-member Board context, this reflects that the sole decisionmaker failed to perform the adjudicative function required by regulation.

**Substantive APA Deficiencies**

18. Plaintiffs allege the agency treated UFCU's account labels and internal system fields as conclusive, even though the administrative record contains material contradictions across account-opening materials, periodic statements, internal fields, and contemporaneous communications.

19. Plaintiffs allege the Defendants did not address record-reliability concerns that were especially salient given the agency's oversight materials reflecting employee fraud and concealment affecting UFCU's operations and records; the agency relied on inconsistent and unreliable records to resolve an insured-shares question, without explaining why it accorded more weight to some records over competing contemporaneous evidence.

**Procedural APA Deficiencies**

20. Plaintiffs **contend** the Defendants failed to address material evidence and arguments.

21. Plaintiffs contend that, at best, the Defendant NCUA Board adopted the liquidating agent's determination without connecting all material evidence known to the Board and relevant to the determination Plaintiffs' claim at the time of the Board's "deemed denial" and, at worst, the Board blindly rubber-stamped the liquidating agent's determination.

22. Plaintiffs seek a declaration that the deemed denial should be set aside and that the insured-share claim should be considered, in accordance with de novo review required by Defendant's own regulations, with a reasoned explanation addressing the material evidence and issues Plaintiffs presented.

23. This case presents a uniquely documented factual record that permits resolution on narrow, case-specific grounds, without requiring the Court to adopt or announce any broad rule governing all credit union liquidations or insurance determinations.

**Notice to Defendants and Opportunity to Resolve and Avoid Litigation**

24. On April 9, 2026, Plaintiffs sent Notice to NCUA Chairman Kyle S. Hauptman (Defendant) and NCUA General Counsel regarding imminent APA judicial review and an opportunity for the agency to *"resolve this matter on a narrow, non-precedential basis"* – to avoid litigation (EXHIBIT J). NCUA confirmed receipt of the Notice the same day, however, to date, neither the General Counsel nor the Chairman responded.

**Relief Sought**

25.    Plaintiffs seek a declaration that the agency's final action – "deemed denial" should be set aside and that the insured-share claim should be reconsidered, acknowledging account record defects, classification inconsistencies, and evaluating correspondence with UFCU personnel demonstrating confusion in favor of Plaintiffs, with a reasoned explanation addressing the material evidence and issues Plaintiffs presented.

## III. JURISDICTION AND VENUE

26.    This action seeks judicial review of final agency action (Exhibits A and B) under the Administrative Procedure Act, 5 U.S.C. §§701-706.

27.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the federal laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 701-706, 12 C.F.R. § 745.202(c), and 12 C.F.R. § 746.206(b).

28.    Venue is alleged to be proper in this District because Unilever Federal Credit Union had a principal place of business located in this District.

## IV. STATEMENT OF FACTS

29.    On December 16, 2004 Plaintiffs became members of Unilever Federal Credit Union and remained members continuously until its involuntary liquidation on April 30, 2025.

8

30. Plaintiffs held share certificates at the time of liquidation and suffered monetary losses due to the challenged conduct.

31. As of April 16, 2025, Defendant Kyle S. Hauptman is a sole member of the NCUA Board, serving as the sole authority over NCUA regulatory, supervisory, insurance, and adjudicative functions, including Board appeals and insured-share determinations. Defendant served in this capacity and had such authority at the time of liquidation and post liquidation proceedings affecting Plaintiffs.

32. On April 30, 2025, the National Credit Union Administration placed Unilever Federal Credit Union (UFCU) into involuntary liquidation and appointed itself as liquidating agent, publicly stating the credit union was insolvent and had no prospect for restoring viable operations.

33. On June 23, 2025, Defendant NCUA acting through AMAC provided an uninsured shares initial determination via email but was unable to mail the letter with payment of insured shares due to the incorrect coding of CD35 (the letter incorrectly referred to CD35 as being Ellen Plotkin sole ownership and listed in incorrect share amount; in fact, CD35 was Alexander Plotkin sole ownership) (EXHIBIT C, Letter of June 23).

34. On July 24, 2025, AMAC issued an initial share determination letter leaving uninsured shares (reference to CD35 as being Ellen Plotkin's and amount remained incorrect) (EXHIBIT C, Letter of July 24).

35. On August 12, 2025 Plaintiffs pointed out the mistaken reference to CD35; AMAC provided a corrected letter via email, past dated as of July 23, 2025 (EXHIBIT C, Letter of July 23).

36. On August 21, 2025, Plaintiffs submitted a Request for Reconsideration (EXHIBIT D) relating to their UFCU share certificates, providing reasons and extensive additional written evidence establishing that (1) CD37 was not in good faith kept as a POD account by UFCU and therefore must be viewed in a manner most favorable to Plaintiffs as a Single classification and (2) transfer of **CDs 20 and 22** in a turbulent time prior to liquidation based on defective records was itself defective and should be reversed, bringing the funds to their long-standing Joint classification.

37. On September 19, 2025 AMAC provided an Uninsured Shares Reconsideration Determination which stated (1) **CDs 20 and 22** could not be restored as Joint owner accounts because Plaintiffs "explicitly instructed" UFCU to move the funds to CD accounts 37 and 34, and (2) reclassification of remaining uninsured share balance could not be completed after liquidation based on credit union's failure to fulfill Plaintiffs' request to ensure all accounts were fully insured (EXHIBIT H).

**FINAL AGENCY ACTION**

38. On November 12, 2025, Plaintiffs filed a timely appeal (EXHIBIT I).

39. On February 13, 2026, Special Counsel issued an administrative denial, stating *"we are administratively denying your appeal"* (EXHIBIT A, emphasis added).

40. On March 3, 2026, NCUA confirmed that the February 13, 2026 letter constituted final agency action and that the *"denial of the appeal"* was without a Board decision (EXHIBIT B, emphasis added).

41. Under 12 C.F.R. § 746.206(a), Special Counsel must conduct a *de novo* review, including collecting all relevant materials and independently evaluating the record.

42. Defendants did not disclose or evidence any such *de novo* review.

43. The agency action contains no findings, no reasoning, no response to Plaintiffs' evidence, and no application of Part 745.

**A. Plaintiffs Allege Core Conversion and Record Defects**

44. In October 2024, UFCU switched core processing systems (EXHIBIT E, p. 1).

45. After the conversion, UFCU failed to display ownership details, shifted to quarterly statements, maintained inconsistent and incomplete classifications across accounts, and relied on informal or placeholder fields such as "nicknames" rather than formal ownership designations.

46. On February 7, 2025, UFCU admitted that ownership details were "not visible" and that members would need to rely on account:

"nicknames"

or wait for future statements (EXHIBIT E).

47. These facts illustrate systemic record unreliability; the principal issue is CD 37.

**B. CD 37 (Central Issue)**

48.     Plaintiffs challenged CD 37 in the administrative process.

49.     On February 10, 2025, a screenshot showed a blank POD field and incorrect data (EXHIBIT F).

50.     Plaintiffs presented a detailed reclassification argument supported by account-opening documents, periodic statements, system screenshots, and internal inconsistencies demonstrating that CD 37 was not consistently or reliably maintained as a POD account, including:

      a. *the original Share Certificate Account opening document did not include the POD designation*; and

      b. a system screenshot (EXHIBIT F) that:
        *leaves blank the 'Pay on Death' line*, while
        other fields contained incorrect or unrecognizable data. (EXHIBIT I).

51.     Defendants never addressed this extensive written Credit Union Account Record evidentiary chain.

52.     **Proper** application of 12 C.F.R. Part 745 to the existing administrative record—which is extensive, fully developed, and presents a discrete classification question—requires reclassification and **proper** insurance treatment of CD 37.  Resolution of this issue determines the insured-share amount without the need for further fact finding.

**C. OIG Findings and Record Reliability**

53.     On October 22, 2025, the NCUA Office of Inspector General issued its report, signed by the Acting Inspector General, identifying fraud and concealment of liquidity conditions at UFCU, and on November 21, 2025, the report was publicly released. (EXHIBIT G).

54.     In the table entry for Unilever, the report states:

   *Unilever was involuntarily liquidated due to fraud. Two credit union employees hid borrowings and used them to conceal their fraudulent activity and mask the credit union's true liquidity position.* (EXHIBIT G).

55.     NCUA leadership, including Defendant Hauptman, knew or had constructive knowledge of these findings at the time of issuing the deemed denial of Plaintiffs' appeal on February 13, 2026, and those findings bear directly on the reliability of UFCU's records during the relevant period.

56.     Defendant Hauptman did not issue a reasoned decision, did not address known record defects, and permitted the deemed denial despite these defects while exercising sole authority over the appeal.

57.     Defendants forced Plaintiffs to litigate in a vacuum by failing to provide a decision or a complete administrative record, including supervisory materials and internal analyses, thereby requiring Plaintiffs to pursue parallel and successive FOIA requests to obtain information necessary to understand and challenge the agency's determination.

13

**D. Comparator (BD-08-25)**

58.    In a materially similar matter, Board Appeal BD-08-25 (Member #13236), the agency was presented with extensive documentary evidence demonstrating inconsistent account classifications and misleading member-facing communications.

59.    A sworn declaration from Member #13236, submitted herewith as EXHIBIT K, further details the factual record in that matter, including contemporaneous communications, account documentation, and the agency's ultimate reversal of uninsured classifications.

60.  That matter involved an acknowledged classification defect ("single and POD"), which NCUA recognized as inconsistent with 12 C.F.R. Part 745 and incapable of being reconciled under the regulatory framework without corrective action, reflecting that such a classification is not permitted under the governing rules.

61.  The same Special Counsel, Pamela Yu, handled both BD-08-25 and Plaintiffs' matter, and both matters involve the same universe of UFCU records, misleading personnel communications, and both pre- and post-conversion system defects. The Board's decision in BD-08-25 and the Board's deemed denial in Plaintiff's appeal BD-10-25 were issued within 2 weeks of each other.

62.  In BD-08-25, NCUA evaluated correspondence with UFCU personnel demonstrating:

    a. *confusion,*

14

b. *inconsistent classifications,* and

c. reliance on defective account records, and

on that basis corrected the classification and resolved ambiguity in favor of the member in the decision dated January 30, 2026. (EXHIBIT K).

63. By contrast, in Plaintiffs' case, Defendants refused to evaluate materially similar evidence—including correspondence, statements, and system defects—and instead treated the same category of defective records as conclusively binding.

63.a. Under established administrative law principles, an agency acts arbitrarily and capriciously when it treats materially similar cases differently without a reasoned explanation, particularly where the same decisionmaker, regulatory framework, and factual predicates are present. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto.Ins. Co., 463 U.S. 29 (1983). Comparator evidence is therefore properly considered where it demonstrates (i) materially similar facts, (ii) application of the same governing regulations, and (iii) inconsistent agency outcomes without explanation. These conditions are satisfied here.

64. By the time Plaintiffs' November 12, 2025 appeal was submitted and considered, Defendants had actual knowledge—through BD-08-25—of (a) the unreliability of UFCU records, (b) the existence of classification defects arising from those records, and (c) the availability of a corrective analytical approach consistent with Part 745.

65. Despite this knowledge, Defendants did not apply the same reasoning, did not distinguish the cases, and did not provide any explanation for the different outcome.

66. The sworn declaration of Member #13236 (EXHIBIT K) is offered not to expand the administrative record in this case, but to demonstrate the agency's contemporaneous knowledge of materially similar record inconsistencies, as well as its differential treatment of similarly situated members. This evidence is relevant to Plaintiffs' claims under 5 U.S.C. § 706(2), including arbitrary and capricious action and failure to engage in reasoned decision-making.

**E. Regulation by Enforcement**

67. Defendants applied an unwritten rule that credit union account records are conclusively binding regardless of their reliability, internal consistency, or documented defects, even where those records conflict with contemporaneous evidence, including account-opening documents, statements, and system fields.

68. This unwritten rule does not appear in 12 C.F.R. Part 745, which governs insured-share determinations and does not mandate blind reliance on defective or contradictory records.

69. By contrast, federal deposit insurance principles recognize that where institutional records are ambiguous, inconsistent, or unreliable, the decisionmaker may consider other evidence to determine actual ownership, rather than elevate defective records over reality.

70. Defendants applied a stricter, *de facto*, rule only after liquidation and only in the context of denying insurance coverage, without prior notice, guidance, or rulemaking.

16

71. In practice, Defendants treated UFCU's flawed records as dispositive while refusing to reconcile contradictions across multiple record sources, thereby substituting an unwritten policy for the regulatory framework set forth in Part 745.

72. This conduct constitutes unlawful regulation by enforcement because Defendants effectively created and applied a new substantive rule—conclusive reliance on defective records—without notice-and-comment and without fair notice to Plaintiffs.

**F. CD20 and CD22 Transfer: Extensive Written Evidence Submitted but not Considered**

73. The entirety of the agency's review of the administrative record effectively ended with AMAC's response to the reconsideration request, relying on a purported Member instruction dated January 29, 2025.

74. On January 29, 2025, Plaintiffs raised concerns about stability and ownership/insurance classification errors and sought corrections. (EXHIBIT E).

75. However, Plaintiffs allege, that instruction was born out of underlying inaccurate and missing ownership classifications on Account statements provided by UFCU:

Error-propagated records → erroneous transfer → still and more error-propagated records.

76. UFCU acknowledged statement errors, indicating that UFCU's core processing system was unable to enter, store, or maintain the full contractual terms of certain share certificates (EXHIBIT E).

17

77.     Plaintiffs allege despite the deficient recordkeeping systems and internal controls, on February 7, 2025, staff confirmed having executed a transfer that Plaintiffs contend moved funds from **long-standing Joint classification** (Joint CDs 20 and 22) into a disputed category shortly before liquidation. (EXHIBIT E).

78.     The resulting transfer occurred during a period of known operational instability, including system changes and record inconsistencies about 90 days before liquidation.

79.     Plaintiffs allege that the transfer was defective because it was induced by erroneous member-facing records and executed without correcting underlying ownership errors, leading to later insurance classification disputes.

80.     Plaintiffs allege the defective directive led to a defective transaction, resulting in a defective overall record - CD37, where CD20 funds were moved.

81.     Plaintiffs allege this "error-propagation" occurred within a five-employee institution where 40% of the staff were enmeshed in concealing borrowings and masking liquidity, the resulting account records are **fraud-tainted**.

82.     Plaintiffs allege NCUA's failure to provide any decision, let alone a reasoned explanation for its decision, combined with its unexplained disparate treatment of members and its reliance on error-propagated records, renders the denial of Plaintiff's claim arbitrary, capricious, and contrary to 12 C.F.R. 746.206(b) which provides:

> The decision by the Board shall be in writing, **stating the reasons for the decision**, and shall constitute a final agency action for purposes of chapter 7 of title 5 of the United States Code.

(Emphasis added.)

83.     The transfer must be reversed.

18

## V. STATEMENT OF CLAIM

### COUNT I. -Arbitrary and Capricious Administrative Denial of Plaintiffs' Insured-Share Claim

84. Plaintiffs reallege the foregoing paragraphs.

85. Defendants, including Defendant Hauptman acting as the sole Board decisionmaker, relied on defective and internally inconsistent records and ignored key evidence, including documentary inconsistencies, CD 37 classification defects, CD20 and 22 transfer defects, OIG findings, and comparator case evidence.

86. The agency's failure to reconcile materially similar evidence—while reaching different outcomes in comparable cases, as reflected in the sworn declaration of Member #13236—further demonstrates arbitrary and inconsistent decision-making.

87. The action is arbitrary and capricious.

### COUNT II – FAILURE TO ISSUE DECISION

88. Defendant Hauptman, acting as the sole Board decisionmaker, failed to issue a reasoned decision as required.

### COUNT III – UNEXPLAINED INCONSISTENCY

89. Defendants, including Defendant Hauptman in his adjudicative capacity, treated similar cases differently without explanation.

**COUNT IV – FAILURE TO DECIDE CD 37**

90.     Defendant Hauptman, as the sole Board decisionmaker, failed to adjudicate a central, outcome-determinative issue—namely, the classification and proper insurance treatment of CD 37—despite a fully developed evidentiary record.

**COUNT V – REGULATION BY ENFORCEMENT**

91.     Defendants, acting through Defendant Hauptman in his capacity as the sole authority over adjudicative and insurance determinations, applied an unwritten rule.

**VI.  PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Defendants' final agency action is unlawful under the Administrative Procedure Act;

B. Vacate the denial of Plaintiffs' insured-share claim, as vacatur is especially warranted where Defendants failed to issue any reasoned decision, failed to rely on the required *de novo* review, and failed to address a discrete, outcome-determinative issue (CD 37) despite a fully developed record, and where the existing record permits resolution of that issue without further fact-finding;

C. Grant such declaratory relief as necessary to effectuate the Court's judgment and to ensure proper application of 12 C.F.R. Part 745 to Plaintiffs' accounts;

20

D. In the event the Court determines that remand is necessary, remand this matter on a limited and constrained basis with instructions requiring Defendants to: (1) issue a written decision stating reasons; (2) conduct and document the *de novo* review required by 12 C.F.R. § 746.206(a), including collection and consideration of all pertinent materials; (3) address CD 37 independently and explicitly; (4) reconcile record inconsistencies across account-opening documents, statements, and system fields; (5) address error propagation of defective records to defective transfer of CDs 20 and 22; (6) address OIG findings and their implications for record reliability; and (7) explain any differential treatment from Board Appeal BD-08-25;

E. Award Plaintiffs costs and such other relief as the Court deems just and proper.

We declare under penalty of perjury that the foregoing is true and correct.

Signed this 13th day of April, 2026.

Signature of Plaintiff No. 1: _____
Ellen Plotkin, *Pro se*
43 Saxonia Avenue
Wyckoff NJ 07481
Telephone: 551-298-2483
Fax: 201-485-7746
ellenpltkn@gmail.com

Signature of Plaintiff No. 2: _____
Alexander Plotkin, *Pro se*
43 Saxonia Avenue
Wyckoff NJ 07481
Telephone: 551-298-2483
Fax: 201-485-7746
alexpltkn@yahoo.com

21

## LIST of EXHIBITS

### Exhibit A– February 13, 2026 NCUA Administrative Denial Letter (Regarding Plaintiffs' Appeal BD-10-25)

Issues a one-sentence administrative denial stating:

*"we are administratively denying your appeal."*

### Exhibit B – March 3, 2026 NCUA Clarification Letter (Deemed Denial)

Evidences that Board decision was not issued within the required period and that the appeal was "*deemed a denial*" pursuant to 12 C.F.R. § 746.206(b), thereby exhausting administrative remedies and rendering the matter reviewable under the APA.

### Exhibit C – Initial Determination Letters (June 23, July 24 and July 23, 2025)

Evidence that UFCU did not properly code Single accounts, necessitating NCUA/AMAC to recode Plaintiffs' accounts in order to issue delayed payment of insured shares. Initial Determination letters required correction.

### Exhibit D – August 21, 2025 Plaintiffs' Request to NCUA/AMAC for Reconsideration

Reasons and extensive additional written evidence establishing that (1) CD37 was not in good faith kept as a POD account by UFCU and therefore must be viewed in a manner most favorable to Plaintiffs as a Single classification and (2) transfer of **CDs 20 and 22** in a turbulent time prior to liquidation based on defective records was itself defective and should be reversed, bringing the funds to their long-standing Joint classification.

### Exhibit E – February 7, 2025 UFCU Email String (Core System / Missing Ownership Information) including January 30, 2025 UFCU Execution of Transfer

Evidences UFCU's recent core system transition and lack of member visibility into ownership details and classifications, demonstrating that instructions during this period were based on incomplete and unreliable information.

# EXHIBITS (cont'd)

### Exhibit F – February 10, 2025 CD37 System Screenshot

Reflects internal system data for CD37 showing objective inconsistencies, including: (i) incorrect maturity date; (ii) absence of a populated POD designation field; and (iii) conflicting or unrecognizable account identifiers, demonstrating unreliable account records for insurance classification purposes.

### Exhibit G –

### October 22, 2025 NCUA Office of Inspector General (OIG) semi-annual Report issued and signed by the Acting Inspector General) ;

### November 21, 2025 OIG Report was publicly released

Identifies fraud and concealment of liquidity conditions at UFCU; in the table entry for Unilever FCU, on page 13, the report states:

> *Unilever was involuntarily liquidated due to fraud. Two credit union employees hid borrowings and used them to conceal their fraudulent activity and mask the credit union's true liquidity position.*

### Exhibit H – September 19, 2025 Reconsideration Determination by NCUA/AMAC

Determines that (1) **CDs 20 and 22** could not be restored as Joint owner accounts because Plaintiffs "explicitly instructed" UFCU to move the funds to CD accounts 37 and 34, and (2) reclassification of remaining uninsured share balance could not be completed after liquidation based on credit union's failure to fulfill Plaintiffs' request to ensure all accounts were fully insured.

### Exhibit I – November 12, 2025 Plaintiffs' Appeal to the NCUA Board

Appeals to the NCUA Board to consider the totality of the record, in full context, and reverse the transfer error of CDs 20 and 22, as well as return all uninsured shares. Requests Oral Hearing.

### Exhibit J – April 9, 2026 Notice to NCUA Chairman and General Counsel

Notifies NCUA Chairman and General Counsel of imminent APA judicial review and an opportunity for the agency to resolve this matter on a narrow, non-precedential basis – to avoid litigation. The Office of the General Counsel confirmed receipt of the Notice the same day.

2

## EXHIBITS (cont'd)

### Exhibit K – April 13, 2026 Signed Sworn Declaration of Member # 13236

The sworn declaration of Member #13236 is offered not to expand the administrative record in this case, but to demonstrate the agency's contemporaneous knowledge of materially similar record inconsistencies, as well as its differential treatment of similarly situated members. This evidence is relevant to Plaintiffs' claims under 5 U.S.C. § 706(2), including arbitrary and capricious action and failure to engage in reasoned decision-making.